## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| RAMIRO BALDERRAMA-BACA, a/k/a ROMAN BALDERRAMA-BACA, SALVADOR MATEOS SR., and PEDRO ESCUTIA, on behalf of themselves and all other similarly situated plaintiffs known and unknown, | ) ) ) ) ) ) ) ) | 15 C 5873 Judge John Z. Lee |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| CLARENCE DAVIDS AND COMPANY, | ) ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are current and former employees of Defendant Clarence Davids and Company ("Clarence Davids") who have filed a lawsuit alleging that Clarence Davids required them to perform off-the-clock work without pay in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law (IMWL), 820 Ill. Comp. Stat. 105/1 *et seq.* They also allege that Clarence Davids covered the cost of employees' uniforms by taking payroll deductions without first obtaining contemporaneous written authorization as required by the Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Comp. Stat. 115/1 *et seq.*

Plaintiffs have filed a motion for class certification pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3), seeking certification solely with respect to their IWPCA claims. For the reasons provided herein, Plaintiffs' motion is granted.

# I. Background

## A. Payroll Deduction Policies

Clarence Davids is a "full-service landscaping company offering landscape design, installation, and maintenance services throughout the Chicagoland area." Def.'s Br. Opp. at 2, ECF No. 37. The company presently employs approximately 150 individuals who work on crews providing landscaping or maintenance services. Pls.' Mem. Supp. at 2, ECF No. 28. Since at least 2004, Clarence Davids has required its landscaping and maintenance crew members to wear uniforms. Def.'s Br. Opp. at 2. Clarence Davids acknowledges that it has taken deductions from its employees' paychecks to cover the cost of these uniforms. *Id.* When deductions were taken, they were documented on employees' payroll records and coded with the letter "U" for "uniform." Pls.' Mem. Supp., Ex. 1, at 29.

Clarence Davids has used several different uniform deduction policies since 2005. First, from 2005 to 2010, only "new employees" (as opposed to "returning employees") were charged for uniforms.[1] These charges were taken in two payroll deductions of $37.50 each. It does not appear that employees were required to fill out any forms in connection with the uniform deductions taken during this period. *See* Def.'s Br. Opp. at 2–3; *see also id.*, Ex. 1, 2002 Crew Member Uniform Policy.

Second, from 2011 to the end of 2012, all employees—both new and returning—were charged for the purchase of their uniforms through payroll

---

[1] Clarence Davids regarded an employee as a "returning employee," rather than a "new employee," when the employee had already worked for Clarence Davids during the landscaping season of the previous calendar year. *See* Pls.' Mem. Supp. at 2–3; *id.*, Ex. 1, at 15–18.

deductions. In this period, employees were required to complete and sign a form entitled "Uniform Record." This form contained a chart where employees could indicate the quantity and size of the uniforms they needed. *Id.* at 3; *see also id.*, Ex. 5, CD000088, Uniform Record. The cost of the uniforms that employees ordered was deducted from their paychecks. Pls.' Mem. Supp. at 2–3.

Third, Clarence Davids had two closely related policies that governed new and returning employees, respectively, from 2013 and onward. During this period, new employees were charged for the full cost of their uniforms via two deductions of $62.50 each. New employees were also required to sign a one-page form setting forth Clarence Davids's uniform requirements and stating: "The deduction for uniforms will be taken out of the employee's first two payroll checks after receiving their uniforms. Total deductions of $125.00 (62.50 each)." Def.'s Br. Opp. at 3; *id.*, Ex. 7, New Crew Member Uniform/Dress Policy. Similarly, during this period, returning employees were charged for the rental cost of their uniforms via biweekly payroll deductions. Returning employees signed a one-page form setting forth Clarence Davids's uniform requirements and stating: "The employee will have a payroll deduction of $14.00 per payroll for the uniform rental service." *Id.* at 4; *id.*, Ex. 8, Seasonal Crew Member Uniform/Dress Policy. The form that returning employees signed bears a close resemblance to the form that new employees signed, in that the two forms contain substantially similar language and information and also require an employee signature. *See id.*, Ex. 7–8.

## B. Proposed Class and Subclass Definitions

On March 24, 2016, Plaintiffs moved for class certification of their IWPCA claims pursuant to Rule 23(b)(3). In their memorandum in support of class certification, Plaintiffs offered the following definition of the proposed class:

> All employees who work or worked for Clarence Davids [and] Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs *without providing a contemporaneous written authorization*, from July 2, 2005 to the date this Court enters an Order approving the Plaintiff class pursuant to Fed. R. Civ. P. 23.

Pls.' Mem. Supp. at 4 (emphasis added).

In its response brief, Clarence Davids argued that Plaintiffs' motion should be denied on the ground that Plaintiffs had proposed a "fail-safe" class definition.[2] Def.'s Br. Opp. at 8. Accordingly, in their reply, Plaintiffs proposed an amended class definition to address this objection. The amended definition omitted the phrase "without providing a contemporaneous written authorization" and read as follows:

> All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, from July 2, 2005 to the date this Court enters an Order approving the Plaintiff class pursuant to Fed. R. Civ. P. 23.

Pls.' Reply at 4, ECF No. 41.

---

[2] A "fail-safe" class is a class that is "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

After Plaintiffs proposed this amended definition, however, the Court requested supplemental briefing from the parties regarding the appropriateness of certifying subclasses in this case. In their supplemental brief, Plaintiffs proposed certification of the following subclasses:

> *Subclass I: 2005–2010/2013–16 Landscaping Seasons New Employees*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, from July 2, 2005 through the end of the 2010 landscaping season and/or from 2013 through the end of the 2016 landscaping season, as new hires.

> *Subclass II: 2011–12 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, in the 2011 and 2012 landscaping seasons.

> *Subclass III: 2013–16 Landscaping Seasons Return Employees*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, from the 2013 landscaping season through the end of the 2016 landscaping season, as return employees.

With these proposed subclass definitions in mind, the Court now turns to the merits of Plaintiffs' motion for class certification.

## II. Legal Standard

Under Rule 23(a), class certification is permitted only when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a); *see also Messner*, 669 F.3d at 811. In addition, when class certification is sought pursuant to Rule 23(b)(3), "proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)).

"Rule 23 does not set forth a mere pleading standard." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rather, "[p]laintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner*, 669 F.3d at 811. As such, when reviewing a motion for class certification, a court "may not simply assume the truth of the matters as asserted by the plaintiff[s]," but instead must receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate. *Id.* (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350–51 (internal quotation marks omitted).

Although "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *id.*, it has been long recognized that considerations bearing on class certification often overlap with issues underlying

the merits of the plaintiffs' claims. *See Wal-Mart*, 564 U.S. at 351; *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993). A court must accordingly "make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo*, 329 F.3d at 676).

Finally, Rule 23(c)(5) permits district courts to divide a class into subclasses. Fed. R. Civ. P. 23(c)(5). Certification of subclasses is permissible "as long as each subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and each subclass otherwise satisfies the requirements for certifying a class, so that each could be the plaintiff class in a separate class action." *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012). "[T]he district court has a 'broad range of discretion in determining whether to create subclasses.'" *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 591 (N.D. Ill. 2016) (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1129 n. 38 (7th Cir. 1979)).

### III. Analysis

Plaintiffs have moved for class certification of their IWPCA claims pursuant to Rule 23(b)(3), arguing that their proposed subclasses meet the requirements of numerosity, commonality, typicality, and adequacy under Rule 23(a), as well as the requirements of predominance and superiority under Rule 23(b)(3). In response,

Clarence Davids focuses solely on the requirements of commonality, predominance, and superiority.[3] Nevertheless, mindful that "certification is proper only if the trial court is satisfied . . . that the prerequisites of Rule 23(a) have been satisfied," *Wal-Mart*, 564 U.S. at 351–52 (internal quotation marks omitted), the Court now turns to discuss all four requirements for class certification under Rule 23(a), as well as the requirements of predominance and superiority under Rule 23(b)(3). As explained below, the Court finds that Plaintiffs meet all of these requirements, and the Court therefore grants Plaintiffs' motion for class certification.

## A. Rule 23(a)(1): Numerosity

Rule 23(a) requires that members of a certified class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that they have established numerosity under Rule 23(a) because "at present alone, there are approximately 150 landscaping laborer employees at Clarence Davids." Pls.' Mem. Supp. at 5 (emphasis omitted). In addition, Plaintiffs state that Clarence Davids employed at least 150 employees per year during the relevant time period. Pls.' Supp. Mem. at 4.

---

[3] As mentioned above, Clarence Davids also contends that Plaintiffs' original class definition would impermissibly create a fail-safe class by limiting membership to those who experienced uniform deductions "without providing a contemporaneous written authorization." Def.'s Br. Opp. at 8. When plaintiffs propose a fail-safe class, however, this problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. Here, Plaintiffs' amended class definition and subclass definitions avoid creation of a fail-safe class by omitting the phrase "without providing a contemporaneous written authorization." Omission of this phrase has rendered Clarence Davids's objection to the original definition moot, and the Court therefore need not address the issue further.

As noted above, Clarence Davids does not dispute that Plaintiffs have established numerosity. Moreover, many courts have held classes of forty or more members to be sufficiently numerous to warrant class certification. *See, e.g.*, *Pruitt v. City of Chi.*, 472 F.3d 925, 926–27 (7th Cir. 2006); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008). In the present case, each proposed subclass spans more than one landscaping season and thus includes at least 150 members.[4] The Court therefore finds that Plaintiffs have satisfied the numerosity requirement.

## B.      Rule 23(a)(2): Commonality

For class certification to be proper, the class members' claims must present common questions of law or fact. Fed. R. Civ. P. 23(a)(2). A question is common to the class if it generates a common answer, such that determination of the question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The common questions "need not address every aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'" *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 350).

Here, Plaintiffs assert that a common question drives the resolution of their claims—namely, the question of whether Plaintiffs "experienced payroll deductions for mandatory uniforms without providing the contemporaneous authorizations

---

[4]      As will be discussed in the next section, the Court has proposed modifications to Plaintiffs' subclass definitions. With those modifications, the relevant time period for each subclass still spans more than one landscaping season. The analysis with respect to the numerosity requirement is thus unaffected by the proposed modifications below.

required by the IWPCA." Pls.' Mem. Supp. at 6. In response, Clarence Davids argues that Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement because the company's uniform deduction policies changed several times during the class period. *See* Def.'s Br. Opp. at 10–11. Specifically, Clarence Davids emphasizes that deductions were taken from employees' pay under: the 2005–2010 policy, under which employees apparently completed no forms in connection with uniform deductions; the 2011–2012 policy, under which employees completed the form entitled "Uniform Record"; the 2013–2016 policy for new employees, who completed a form entitled "New Crew Member Uniform/Dress Policy"; and the 2013–2016 policy for returning employees, who completed a substantially similar form entitled "Seasonal Crew Member Uniform/Dress Policy." *Id.*

Clarence Davids's arguments on this point are well taken. If Plaintiffs were permitted to proceed as a single class, no single common question would be capable of resolving the class members' claims in "one stroke," as Rule 23 requires. *Wal-Mart*, 564 U.S. at 350. Rather, Plaintiffs' claims could be resolved only through inquiry into a set of closely related but nevertheless distinct questions: the questions of whether Plaintiffs experienced payroll deductions for mandatory uniforms without providing contemporaneous written authorization as required by the IWPCA (1) under the 2005–2010 policy, (2) under the 2011–2012 policy, or (3) under the 2013–2016 policies for new and returning employees.

That said, Clarence Davids's objection is not grounds for denial of Plaintiffs' class certification motion. Instead, certification of subclasses, each corresponding to

the time period in which Clarence Davids's various policies were in effect, adequately ensures commonality. As noted above, Plaintiffs have proposed certification of three subclasses: one that includes new employees from the 2005–2010 and 2013–2016 landscaping seasons, a second that includes employees (both new and returning) from the 2011–2012 landscaping seasons, and a third that includes only returning employees from the 2013–2016 landscaping seasons. Having reviewed the evidence in the record and considered the similarities and differences among Clarence Davids's deduction policies, however, the Court concludes that modifying Plaintiffs' subclass definitions is appropriate. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation."); *Thomas v. Matrix Corp. Servs.*, No. 10 C 5093, 2012 WL 3581298, at *4 (N.D. Ill. Aug. 17, 2012) (creating time-delimited subclasses in Illinois wage and hour case). The Court's modified subclass definitions are as follows:

> *Subclass I: 2005–2010 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, from July 2, 2005 through the end of the 2010 landscaping season.

> *Subclass II: 2011–2012 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, in the 2011 and 2012 landscaping seasons.

> *Subclass III: 2013–2016 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, from the 2013 landscaping season through the end of the 2016 landscaping season.

With these modifications, the proposed subclasses map onto the key time periods in which Clarence Davids's different deduction policies were in effect. This best satisfies Rule 23(a)'s commonality requirement. Within each subclass, the class members' claims will turn on the question of whether the class members experienced payroll deductions for mandatory uniforms without providing contemporaneous written authorization as required by the IWPCA (1) under the policy in place from 2005 to 2010, (2) under the policy in place from 2011 to 2012, or (3) under the polices in place for new and returning employees from 2013 to 2016. Each of these common questions can be resolved with a common answer, and these questions are central to the validity of Plaintiffs' claims.

In moving forward with this litigation, it is important to note that, unlike the other two subclasses, Subclass III technically encompasses two separate policies, at least under the modified subclass definition the Court has proposed above. In particular, Subclass III covers both the policy governing new employees from 2013 to 2016 as well as the policy governing returning employees during the same period. But these two policies naturally go hand in hand, such that grouping claims relating to these policies into the same subclass is appropriate under Rule 23. As explained above, the two documents that Clarence Davids required its new and returning employees to respectively fill out during this time period were highly similar in both substance and form: they contained similar information about Clarence Davids's uniform requirements, stated that deductions would be taken from employees' paychecks to cover the cost of uniforms, specified the amount of the

deductions, and required an employee signature. *See* Def.'s Br. Opp., Exs. 7–8 (providing examples of the forms used for new and returning employees during the 2013–2016 period). As such, these two documents may appropriately be treated as part of a single, overarching deduction policy that Clarence Davids had in place from 2013 to 2016. Should future developments in the litigation show that it is no longer appropriate to treat the two documents as part of the same general 2013–2016 policy, the Court can revisit this issue at a later time. *See Thomas*, 2012 WL 3581298, at *4 (noting that "certification may always be revisited" if the creation of subclasses proves unmanageable or problematic after the court's original certification decision).

Clarence Davids argues that, even with the availability of subclasses, there are several reasons why the Court should find that Plaintiffs have not established commonality. First, Clarence Davids disputes that its deduction policies can be characterized as applying class-wide—even with respect to Plaintiffs' proposed subclasses—because the amounts of deductions varied among employees and because not every class member had deductions taken in every pay period or every year of his employment. Def.'s Br. Opp. at 10, 12; Def.'s Supp. Mem. at 2–3, ECF No. 60. But such differences among the class members' claims will ultimately bear on the calculation of individual damages, rather than on Clarence Davids's liability with regard to each subclass as a whole. As the Seventh Circuit has made clear, the fact that "individualized remedies and damages may have to be determined for each plaintiff or perhaps for subclasses of plaintiffs . . . does not prevent certification of

the class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015). Here, the need to conduct individualized damages inquiries does not negate the presence of common questions regarding whether deductions pursuant to Clarence Davids's 2005–2010, 2011–2012, and 2013–2016 policies were taken without contemporaneous written authorizations as required by the IWPCA. *Cf. Starr v. Chi. Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 872–75 (N.D. Ill. 2014) (finding the requirements of commonality and predominance satisfied where plaintiffs brought IWPCA claims arising from defendant's tip-pool policies and individual damages could be objectively calculated). Once the legality of Clarence Davids's uniform deduction policies is determined on a class-wide basis, then each class member's individual damages can be mechanically calculated based upon a review of company pay records, which clearly denote the amount of each uniform deduction and the pay period in which each deduction was taken. *See, e.g.*, Def.'s Br. Opp., Ex. 4–6 (providing examples of Clarence Davids's employee pay records).

Next, Clarence Davids notes that some individuals may have deviated from company policy, and it argues that such individuals' claims are therefore unsuitable for class-wide adjudication. For example, Clarence Davids points out that, although Plaintiff Rogelio Salas should have had biweekly deductions taken from his paychecks throughout 2013 pursuant to company policy, his pay records show that no such deductions were taken. Def.'s Br. Opp. at 10. This argument, too, is unpersuasive. Whether the pay records of individual class members like Salas

show a lack of deductions for certain years is merely another issue that can be taken into account upon calculation of individual damages.

Finally, Clarence Davids contends that individualized evidence may show that some class members signed forms related to its 2011–2012 and 2013–2016 policies, even though the company no longer retains copies of those class members' forms. *Id.* at 11. As with Clarence Davids's other arguments, however, this point is unavailing. Whether Clarence Davids no longer retains forms completed by some class members is ancillary to the overarching common question of whether those forms would have served as valid authorizations under the IWPCA, assuming they were completed but later lost or destroyed.

In sum, the individualized issues that Clarence Davids has raised do not undermine the presence of common questions capable of class-wide resolution with respect to each of the subclasses defined above—that is, the questions of whether Plaintiffs experienced payroll deductions for mandatory uniforms without providing contemporaneous written authorization under Clarence Davids's 2005–2010, 2011–2012, and 2013–2016 policies. As such, the Court finds that Plaintiffs, once divided into subclasses corresponding to these policies, have satisfied Rule 23(a)'s commonality requirement.

## C.    Rule 23(a)(3): Typicality

Typicality under Rule 23(a) requires that the named plaintiffs' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members" and "are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is thus

satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 597.

Plaintiffs state that they meet the typicality requirement because "they personally had deductions taken from their pay for uniforms without proper written authorization, which is precisely the legal theory and sole course of conduct upon which the [class's] claims are premised." Pls.' Mem. Supp. at 6. In addition, Clarence Davids does not raise—and the Court does not find—any reason to doubt that the named Plaintiffs' claims have the same essential characteristics as the claims of the members in each subclass. For these reasons, the Court concludes that the typicality requirement is satisfied.

## D.     Rule 23(a)(4): Adequacy

The adequacy requirement under Rule 23(a)(4) comprises two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n*, 7 F.3d at 598. "[A] class is not . . . adequately represented if class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Plaintiffs assert that they satisfy both components of the adequacy requirement. With respect to the qualifications of counsel, Plaintiffs note that their lead attorney, John Billhorn, has "litigated to successful conclusion approximately 500 wage and hour cases during his time at the bar." Pls.' Mem. Supp. at 8. With respect to the second prong of the adequacy requirement, Plaintiffs explain that

each subclass is represented by at least one named Plaintiff. *Id.* at 7; Pls.' Supp. Mem. at 6. Plaintiffs are correct. Subclass I is represented by Plaintiff Ramiro Balderrama-Baca, who began working at Clarence Davids as a new employee and had uniform deductions taken from his pay during the period from 2005 to 2010. Subclass II is represented by Balderrama-Baca as well as by Plaintiffs Pedro Escutia, Salvador Cruz, Benjamin Zinzun-Ortiz, and Rogelio Salas, all of whom worked and had uniform deductions taken during the period from 2011 to 2012. Escutia, Cruz, Zinzun-Ortiz, and Salas also represent Subclass III, because they also worked and had uniform deductions taken during the period from 2013 to 2016. *See* Pls.' Supp. Mem. at 6; Def.'s Br. Opp. at 4–6.

Given the nature of Plaintiffs' claims, there is no indication that the named representatives will be inadequate to protect the interests of their respective subclasses, or that there is any risk of antagonistic or conflicting claims arising within (or even between) each subclass. Indeed, nowhere in its briefing does Clarence Davids disagree that Plaintiffs have established adequacy. Given Plaintiffs' arguments and the lack of disagreement on this point, the Court concludes that Plaintiffs have satisfied the adequacy requirement under Rule 23(a).

### E. Rule 23(b)(3): Predominance

Rule 23(b)(3) builds upon Rule 23(a)'s requirement of commonality by further requiring that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions are said to predominate over other issues in the case when "a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Messner*, 669

F.3d at 815 (internal quotation marks omitted). In other words, class certification under Rule 23(b)(3) is proper when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.*

Within each subclass, the common question of whether Clarence Davids violated the IWPCA by taking payroll deductions without contemporaneous written authorization pursuant to company policy predominates over individualized issues. In disputing this conclusion, Clarence Davids advances the same arguments that it makes in disputing whether the proposed subclasses meet the related requirement of commonality under Rule 23(a). As explained above, however, each of the individualized issues that Clarence Davids raises either speaks to individual damages or is clearly ancillary to the central question of whether Clarence Davids's deduction policies violated the IWPCA.

"It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (citing *Wal-Mart*, 564 U.S. at 362). This is particularly so where the calculation of damages "will be mechanical [and] formulaic, a task not for a trier of fact but for a computer program." *Starr*, 75 F. Supp. 3d at 875 (quoting *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013)). As such, courts have routinely granted class certification under Rule 23(b)(3) in IWPCA cases, finding that issues of liability under the IWPCA predominate over individualized issues of damages. *Torres v. Nation One Landscaping, Inc.*, No. 12 CV 9723, 2014 WL

5350440, at *3 (N.D. Ill. Oct. 21, 2014) (certifying IWPCA class under Rule 23(b)(3) where plaintiff landscape workers alleged that their employer had taken payroll deductions to cover the cost of uniforms without proper authorization); *see also Starr*, 75 F. Supp. 3d at 874–75 (certifying IWPCA class under Rule 23(b)(3) where "the common question of whether the [defendant's] tip pool was properly operated for all tipped employees predominate[d] over the individual damages questions"); *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *5 (N.D. Ill. Sept. 7, 2012) (certifying IWPCA class under Rule 23(b)(3) where question of whether defendant had violated the IWPCA predominated, even though "the specific amount of damages would require individual calculations").

In this case, Plaintiffs have met their burden of demonstrating that common questions predominate over individualized issues as to each subclass. Once it is determined whether Clarence Davids's 2005–2010, 2011–2012, and 2013–2016 policies violated the IWPCA, calculating individual damages will be a simple ministerial matter of gathering employee pay records for the relevant time periods, identifying the deductions taken during those time periods, and applying the IWPCA's statutory damages formula to those deductions. *Cf. Starr*, 75 F. Supp. 3d at 875 (certifying a Rule 23(b)(3) IWPCA class and describing the formulaic process of calculating statutory damages). For these reasons, the Court finds that Plaintiffs have satisfied the Rule 23(b)(3) requirement of predominance.

## F.    Rule 23(b)(3): Superiority

Rule 23(b)(3) permits class certification only in cases where "a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). The Seventh Circuit has recognized that, like commonality, Rule 23(b)(3)'s superiority requirement is closely related to the requirement of predominance—the more that common questions predominate over other issues in the case, the more likely it is that a class action is the superior method of adjudication. *See Messner*, 669 F.3d at 814 n.5.

Clarence Davids's arguments with respect to superiority are identical to its arguments with respect to commonality and predominance. In sum, it contends that a class action is not the superior method of adjudicating the class members' claims because the claims require inquiry into too many individualized issues. Def.'s Br. Opp. at 14. The Court is unpersuaded by these arguments. Because common questions predominate for the reasons explained above, class certification is the most efficient method of adjudicating the class members' IWPCA claims. *See Messner*, 669 F.3d at 814 n.5. Furthermore, proceeding as a class action (or rather, as three "mini–class actions" certified as subclasses) is the superior method of adjudicating these claims because "the individual uniform deductions are quite small and not likely to be adjudicated absent a class procedure." *Torres*, 2014 WL 5350440, at *3. The Court therefore finds that Plaintiffs have satisfied the superiority requirement under Rule 23(b)(3).

# IV.    Conclusion

For the reasons stated herein, Plaintiffs' Rule 23 motion for class certification

[27] is granted.  Plaintiffs may proceed with their IWPCA claims on behalf of the

following three subclasses:

*Subclass I: 2005–2010 Landscaping Seasons*:  All employees who work
or worked for Clarence Davids and Company as maintenance crew
members and/or landscape crew members, and who experienced one or
more deductions from pay for uniform costs, from July 2, 2005 through
the end of the 2010 landscaping season.

*Subclass II: 2011–2012 Landscaping Seasons*:  All employees who work
or worked for Clarence Davids and Company as maintenance crew
members and/or landscape crew members, and who experienced one or
more deductions from pay for uniform costs, in the 2011 and 2012
landscaping seasons.

*Subclass III: 2013–2016 Landscaping Seasons*:   All employees who
work or worked for Clarence Davids and Company as maintenance
crew members and/or landscape crew members, from the 2013
landscaping season through the end of the 2016 landscaping season.

**IT IS SO ORDERED.**                    **ENTERED  3/10/17**

_____
**John Z. Lee**
**United States District Judge**