IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMIRO BALDERRAMA-BACA a/k/a ROMAN BALDERRAMA- BACA, SALVADOR MATEOS SR., and PEDRO ESCUTIA, on behalf of themselves, and all other similarly situated plaintiffs known or unknown,<br><br>        Plaintiffs<br><br>  vs.<br><br>CLARENCE DAVIDS AND COMPANY<br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>No. 15-cv-5873<br><br>Hon. Judge John Z. Lee |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Clarence Davids and Company ("Clarence Davids") moves for partial summary judgment – specifically, Count V of Plaintiffs' Complaint regarding the Illinois Wage Payment and Collection Act ("IWPCA"). Plaintiffs claim Clarence Davids made unauthorized deductions from their paychecks for uniform rental fees. This is not so. First, Plaintiffs' claims fail because they cannot prove any damages and, therefore, lack Article III standing. Moreover, these deductions were not unlawful because Plaintiffs authorized the deductions and the deductions were for Plaintiffs' benefit under the IWPCA. As such, Plaintiffs' claim fails as a matter of law.

**SUMMARY OF UNDISPUTED MATERIAL FACTS**

Clarence Davids is a landscaping company. [Statement of Material Facts ("SOF"), ¶ 1]. Clarence Davids requires as a condition of employment that its landscaping employees wear uniforms for their safety. [*Id.*, ¶¶ 3-4]. The required uniforms have long-sleeve shirts and long

pants that protect landscapers' arms and legs. [*Id.*, ¶ 4]. The uniforms have reflective striping that makes employees visible while working and especially in areas where there are vehicles. [*Id.*]. In 2013, Clarence Davids' safety committee recommended the use of these uniforms to protect its employees. [*Id.*, ¶¶ 3, 4, 8].

Starting in 2009, Clarence Davids started charging employees for their uniforms. [*Id.*, ¶ 6]. At that time, employees purchased their uniforms. [*Id.*]. Employees who purchased uniforms did not sign an authorization form. [*Id.*].

In 2013, Clarence Davids changed its policy so that employees paid a rental fee for their uniforms instead of purchasing them. [*Id.*, ¶ 8]. Employees were charged $7.00 per week for uniform rentals and $14.00 was deducted from employees' paychecks every two weeks. [*Id.*, ¶ 9]. In exchange, the employees were provided with ten uniforms. [*Id.*, ¶¶ 16, 20, 24, 26]. Each week, the employees returned five dirty uniforms and were given five clean uniforms. [*Id.*, ¶ 16].

Starting in 2013, the employees were given written authorization forms regarding the rental deductions and they signed and dated them and returned them to Clarence Davids. [*Id.*, ¶¶ 11-14, 17, 20, 25, 27]. The deduction forms explained that the payroll deduction was to rent the uniforms. [*Id.*, ¶¶ 17, 20, 25, 27]. The amount of money specified on the form was deducted and the employees received and wore the uniforms. [*Id.*]. Plaintiffs' only complaint is that the deduction forms did not give them the opportunity to opt out of the deductions, but opting out was not an option because the uniforms were mandatory. [*Id.*, ¶ 10].

## ARGUMENT

I.  THE APPLICABLE SUMMARY JUDGMENT STANDARD.

The court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(a). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). To survive summary judgment, "the nonmoving party … 'must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.'" *Cackovic v. HRH Chicago, LLC*, No. 12-cv-07386Cackovic, 2014 U.S. Dist. LEXIS 86864, at *14 (N.D. Ill. June 26, 2014), quoting *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). Plaintiff cannot meet that burden here.

## II. CLARENCE DAVID IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' IWPCA CLAIM.

Plaintiffs' IWPCA uniform deduction class allegations should be dismissed as a matter of law because Plaintiffs lack Article III standing to pursue their claim. Moreover, even if they had standing, they could not prove that Clarence Davids violated the IWPCA.

### A. Plaintiffs Lack Article III Standing To Pursue Their IWPCA Uniform Deduction Claim Pursuant to Supreme Court Precedent in *Spokeo v. Robbins*.

Plaintiffs' IWPCA claim fails because Plaintiffs allege only a bare procedural violation – a technical violation of the law with no "concrete" injury as defined in the federal case law. Significantly, there is no evidence that any alleged violation by Clarence Davids resulted in *any* damages to the Plaintiffs. While they claim their signed authorizations for uniform deductions did not comply with the IWPCA, they cannot prove – and indeed have not even alleged – that they have suffered *any* damages as a result. Consequently, Plaintiffs lack Article III standing to pursue their claim.

The law regarding Article III standing is not in dispute. The United States Constitution only permits federal courts to hear "cases" and "controversies." Art. III, §2. "No principle is

more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Raines v. Byrd,* 521 U.S. 811, 818 (1997). The plaintiff in a case bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

One legal requirement in order to establish standing is to show that the plaintiff has "suffered an injury in fact." *Spokeo*, 136 S. Ct. at 1547. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete *and* particularized' and 'actual or imminent,' not 'conjectural or hypothetical.'" *Id.* at 1548 (emphasis added). A "concrete" injury must "actually exist," it must be "real" and not "abstract." *Id*.

In *Spokeo*, the United States Supreme Court ruled that allegations of a procedural statutory violation alone did not confer Article III standing. The plaintiff in *Spokeo* alleged a violation of the Fair Credit Reporting Act ("FCRA") because Spokeo's search engine results of the plaintiff contained inaccuracies regarding his background and personal life. 136 S.Ct. at 1544. In ruling for Spokeo, the Supreme Court held that to have standing to sue pursuant to Article III of the United States Constitution, a plaintiff must allege a concrete and particularized injury-in-fact. *Id.* at 1545. A plaintiff must prove both that the injury was particularized, meaning it "must affect the plaintiff in a personal and individual way," and that it was concrete, meaning "it must actually exist." *Id.* at 1548. In other words, a plaintiff "could not . . . allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement . . ." *Id.* at 1549. Although the plaintiff properly alleged a technical violation of the FCRA, the court held that this was insufficient for Article III standing to sue because he could not prove any actual harm that resulted from the violation. *Id.* at 1549-50; *see also Summers v.*

4

*Earth Island Institute* 555 U.S. 488, 496 (2009) ("deprivations of a procedural right without some concrete interest that is affected by the deprivation…is insufficient to create Article III standing").

The Seventh Circuit and the Northern District of Illinois have applied *Spokeo* to FCRA cases and a wide range of other alleged statutory violations. *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (plaintiff bringing claim under Fair and Accurate Credit Transactions Act had no Article III standing); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (plaintiff bringing claim under Real Estate Settlement Procedures Act had no Article III standing); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (plaintiff bringing claim under Fair Credit Reporting Act had no Article III standing); *Straw v. Village of Streamwood*, No. 17-1867, 2018 U.S. App. LEXIS 11542, at *8-9 (7th Cir. May 3, 2018) (plaintiff bringing claim under Americans with Disabilities Act had no Article III standing); *Vega v. Mid. Am. Taping & Reeling, Inc.*, No. 1:16-cv-08158, 2018 U.S. Dist. LEXIS 98543, at *7-14 (N.D. Ill. Jun. 12, 2018) (plaintiffs bringing claims under Fair Labor Standards Act had no Article III standing); *Aguilar v. Rexnord LLC*, No. 17 CV 9019, 2018 U.S. Dist. LEXIS 110765, at *9-10 (N.D. Ill. Jul. 3, 2018) (plaintiff bringing claim under Illinois Biometric Information Privacy Act had no Article III standing). Notably, *Groshek* and *Myers* are also class action suits.

In *Aguilar*, the plaintiff claimed his employer, Rexnord, violated the Illinois Biometric Information Privacy Act because it failed to obtain a signed release from Aguilar allowing Rexnord to collect or store his fingerprint before using his fingerprint information, and it never explained its fingerprint collection policy to Aguilar. No. 17 CV 9019, 2018 U.S. Dist. LEXIS 110765, at *2 (N.D. Ill. Jul. 3, 2018). The court, relying on *Spokeo,* held that although Rexnord

5

may have been in technical violation of the law, Aguilar lacked Article III standing to pursue his claim. *Id.* at *10. Even if Rexnord was in technical violation, the violations did "not create an 'appreciable risk of harm' to Aguilar's right to privacy in his fingerprints." *Id.* at *7. He was aware that his fingerprints were being collected, and he did not establish that Rexnord had disclosed his fingerprints to any third party, so there was no breach of his privacy. *Id.* at *8-9. Consequently, Aguilar could not establish any injury-in-fact. *See also Meyers,* 843 F.3d at 727 (finding that the plaintiff lacked Article III standing to bring a claim for violation of the Fair and Accurate Credit Transactions Act where the defendant's act of printing the expiration date of the plaintiff's credit card on his receipt did not cause any injury in fact); *Romaine v. Portfolio Recovery Assocs., LLC,* 2017 U.S. Dist. LEXIS 219512 (N.D. Ill. June 12, 2017) (granting the defendant's motion to dismiss the plaintiff's Fair Debt Collection Practices Act claim because the plaintiff failed to allege concrete harm).

  Other jurisdictions have also applied *Spokeo* to prevent recovery where there has not been a material or concrete injury. *See Hancock v. Urban Outfitters, Inc.,* 830 F.3d 511 (D.C. Cir. 2016) (finding no Article III standing on the plaintiffs' D.C. Consumer Identification Information Act and Consumer Protection Procedures Act claims because the complaint lacked allegations that the plaintiffs suffered any cognizable injury as a result of a zip code disclosure); *Romero v. Dept. Store Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) (finding that a debt collector's use of an automated dialing system was merely a procedural violation of the TCPA and did not give the court adequate jurisdiction due to lack of concrete injury); *Tourgeman v. Collins Fin. Servs., Inc.,* 197 F. Supp. 3d 1205 (S.D. Cal. 2016) (finding no concrete injury on remand following the Supreme Court's *Spokeo* decision).

The same result is appropriate when Plaintiffs' claims are considered, regardless of into which subclass[1] a plaintiff falls. The undisputed fact is that Clarence Davids did not charge employees for uniforms until 2009. Thus, no deductions for uniforms were taken prior to 2009 and Plaintiffs' claims prior to 2009 should be dismissed [SOF ¶ 5].

From 2009 through 2012, Clarence Davids employees purchased their uniforms, but they did not sign authorization forms. [Dkt. 64, p. 2; SOF ¶¶ 6, 11]. These employees had payroll deductions for uniform purchases, and although they signed off that they received the uniforms, they did not sign deduction authorization forms. [Dkt. 64, pp. 2-3; SOF ¶¶ 6, 11]. As the *Aguilar* case makes clear, however, the mere fact that these employees were not given authorization forms to sign does not indicate that they were injured in any way. Aguilar knew his biometric data was being collected even if he did not sign a release, so he could not prove an injury-in-fact. *Aguilar*, 2018 U.S. Dist. LEXIS 110765, at *8-9. Similarly, the employees who purchased uniforms between 2009 and 2012 were aware that their pay was being deducted for uniform purchases. [SOF ¶¶ 17, 20, 24, 25]. Like Aguilar, they cannot prove that the mere fact that they did not sign authorization forms was injurious because they have not claimed they were unaware of the deductions or that the deduction amounts were incorrect. The employees received the uniforms they paid for, so they were not injured. Summary judgement is likewise warranted on these claims.

The same is true of Plaintiffs in subclass III who were employed from 2013-2016. Plaintiffs in subclass III signed authorization forms for uniform rental deductions. [Dkt. 64, p. 3]. Although Plaintiffs may allege that Clarence Davids' authorization forms were in technical violation of the IWPCA because they did not inform employees that they could withdraw their

---

[1] The Court in an order dated March 10, 2017, subdivided the class into three subclasses: I (employees with deductions from 2005 to 2010); II (employees with deductions in 2011 and 2012); and III (employees with deductions from 2013 to 2016). [Dkt. 64, p. 11].

authorization at any time, Plaintiffs in subclass III cannot show that this alleged technical violation resulted in any damages. These Plaintiffs had payroll deductions for rented uniforms – and they admittedly received those uniforms. [SOF ¶¶ 16, 20, 24, 26]. No plaintiff claims he was unaware that uniform fees were being deducted from his pay or that the deduction amount was incorrect. In short, Plaintiffs, regardless of subclass, are merely claiming a procedural violation, and this is insufficient to establish Article III standing. Consequently, Plaintiffs' claim must be dismissed.

### B. Clarence Davids Did Not Violate The IWPCA.

Even if Plaintiffs had Article III standing to pursue their IWPCA claim, their claim would fail as a matter of law because they cannot prove any violation. Under the IWPCA, deductions from wages are not prohibited when they are "to the benefit of the employee" or they are "made with the express written consent of the employee." 820 ILCS 115/9. Plaintiffs cannot prevail because the uniform fees deducted from their paychecks were deducted for their benefit and because they consented in writing to the deductions.

#### 1. Uniform Fee Deductions Were Made For Plaintiffs' Benefit.

Plaintiffs cannot prevail because uniform fees were deducted from their paychecks for their benefit. Clarence Davids requires its employees, as a condition of continued employment, to wear uniforms for their safety. The long pants and long sleeves serve as protective gear and the uniforms have reflective striping to make employees visible when they are working and especially near roadways. Since employees are required to wear the uniforms for their safety, the deductions are to Plaintiffs' benefit. Moreover, the payroll deductions saved Plaintiffs from the inconvenience of paying for each of these costs in another manner each week. In *Bell v. Bimbo Foods Bakeries Dist., Inc.*, No. 11 C 03343, 2013 U.S. Dist. LEXIS 170063 (N.D. Ill.

Dec. 3, 2013), the plaintiff similarly claimed his employer made unlawful deductions for expenses. *Id.* at *10-11. The court disagreed and granted summary judgment to the employer, finding that the "deductions benefitted Bell because they were convenient: they saved him from having to pay Bimbo out-of-pocket for these expenses." *Id.* at *15. Clarence Davids could have required each employee to come to the office once a week with cash or a check for his or her uniform fee, but instead it conveniently deducted the fee from their paychecks so employees could more easily receive their uniforms. This is not a violation of the IWPCA.

### 2. Plaintiffs Consented to the Deductions.

Plaintiffs signed authorization forms and thus provided express written consent. When a deduction is to continue over a period of time, provides for the same amount of deduction each period, and allows for voluntary withdrawal for the deduction, consent for the deductions shall be considered to be given freely. In *Osorio v. The Tile Shop, LLC*, the plaintiff similarly claimed unlawful deductions from his wages in violation of the IWPCA. No. 15 C 15, 2015 U.S. Dist. LEXIS 159748 (N.D. Ill. Nov. 27, 2015). The Court ruled for the employer on the pleadings because the plaintiff agreed in writing to the employer's deduction policy. *Id.* at *6-10. *See also Bimbo*, 2013 U.S. Dist. LEXIS 170063, at *16-17 (granting summary judgment for employer and holding that there was no IWPCA violation where the employee gave express written consent to deductions); *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 306 (1st Dist. 2006) (same). The court went on to state that the IWPCA does not require an employee to sign an agreement to permit regular deductions on a biweekly basis or whenever the deductions are made; rather, signing an authorization form at the commencement of employment is sufficient to bind a plaintiff to deductions by his or her employer. *Id.* at *2.

Here, each plaintiff provided express written consent to the deductions they now claim are unlawful. The Plaintiffs have not presented any evidence that Clarence Davids had a policy

or practice of *not* allowing the consent to be withdrawn. Plaintiffs have neither presented evidence that they asked that their consent be withdrawn and that Clarence Davids refused. Because Plaintiffs granted their written consent at the onset of employment, and various points thereafter, they cannot claim after the fact that these deductions were unlawful or unwarranted.[2]

## CONCLUSION

WHEREFORE, Clarence Davids respectfully requests that this Court grant its motion for partial summary judgment, dismiss Plaintiffs' IWPCA uniform deduction claim with prejudice, and grant Clarence Davids all further relief to which it is entitled.

Dated: August 24, 2018

Respectfully Submitted,

*/s/ David B. Ritter*
David B. Ritter
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-4582
Fax: (312) 759-5646
david.ritter@btlaw.com

*Attorney for Defendant Clarence Davids and Company*

---

[2] Even if Plaintiffs claim they did not sign authorizations frequently enough or that the authorization forms were deficient, as discussed above, Plaintiffs still have no injury-in-fact resulting from such alleged violations, so their arguments carry no weight. They admittedly were aware of the deductions being made and they signed forms indicating authorization of those deductions.

## **CERTIFICATE OF SERVICE**

The undersigned hereby states that a copy of the foregoing **Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment** was served on all counsel of record this 24th day of August, 2018 via this Court's ECF system.

*/s/ David B. Ritter*
David B. Ritter

DMS 12900221v2