IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMIRO BALDERRAMA-BACA a/k/a ROMAN BALDERRAMA-BACA, SALVADOR MATEOS SR., AND PEDRO ESCUTIA, et al., on behalf of themselves, and all other similarly situated plaintiffs known or unknown, ) ) ) ) ) ) ) | 15 C 5873 |
| Plaintiffs, ) ) | Judge John Z. Lee |
| v. ) ) | |
| CLARENCE DAVIDS AND COMPANY, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, who are current or former employees of Clarence Davids and Company ("Clarence Davids"), have brought this lawsuit alleging that Clarence Davids required them to work off the clock without pay in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq*. Plaintiffs also allege that Clarence Davids covered the cost of employees' uniforms by taking payroll deductions without authorization in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*

The Court previously certified a class and three subclasses with respect to the IWPCA claim. Now, Plaintiffs and Clarence Davids have filed cross-motions for summary judgment as to liability on Plaintiffs' IWPCA claim. For the reasons stated

herein, Plaintiffs' motion [142] is granted in part and denied in part, and Clarence Davids's motion [138] is granted in part and denied in part.

## Factual Background[1]

Plaintiffs are current or former employees who worked for Clarence Davids between 2005 and 2016. *See* Mem. Op. & Order at 21, ECF No. 64. Clarence Davids is a landscaping company that has over 200 employees in the Chicago area. Def.'s LR 56.1 Stmt. ("Def.'s SOF") ¶ 1, ECF No. 140.

Clarence Davids requires its landscaping employees to wear uniforms consisting of pants, a long-sleeve shirt, and a hat. *Id.* ¶¶ 3–4; Pls.' LR 56.1 Stmt. ("Pls.' SOF") ¶ 11, ECF No. 144. The uniforms feature a company logo on the breast area of the shirt and on the hat. Pls.' SOF ¶¶ 9, 11. Clarence Davids states that the uniforms also feature "reflective caution stripes to protect employees working along the road." Def.'s SOF ¶ 4. Plaintiffs dispute whether these stripes are necessary for safety purposes and how long the uniforms have had the stripes. Pls.' LR 56.1(b) Resp. ¶¶ 3–4, ECF No. 152.

Before 2009, Clarence Davids provided uniforms to employees free of charge. Def.'s SOF ¶ 5. From 2009 through 2012, Clarence Davids required employees to purchase their uniforms, and deducted the cost from their paychecks.[2] *Id.* ¶ 6; Def.'s

---

[1] The following facts are undisputed or have been deemed admitted, except where otherwise noted.

[2] New employees were charged for uniforms starting in 2009. Def.'s SOF ¶ 6. Returning employees were not charged in 2009; instead, starting in 2009, returning employees were charged for uniforms every two years. *Id.* ¶ 7.

LR 56.1(b) Stmt. Add'l Facts ("Def.'s SOAF") ¶ 3, ECF No. 149. These employees did not sign forms authorizing the deductions, although they did sign notes stating that they had received the uniforms. Def.'s SOAF ¶ 3.

In 2013, Clarence Davids replaced its uniform-purchase policy with a uniform-rental policy and began charging employees $14.00 every two weeks, via payroll deduction, for uniform rentals. Def.'s SOF ¶¶ 8–9. That year, employees signed a form that Clarence Davids contends authorized the payroll deductions. *Id.* ¶ 11; Pls.' LR 56.1(b) Resp. ¶ 11.

In 2014, only new employees were asked to sign the form. Pls.' LR 56.1(b) Resp. ¶ 12. And, beginning in 2015, all employees were required to sign the form on an annual basis. *Id.* ¶ 13. The uniforms were mandatory, and the employees were not able to opt out of the payroll deductions. Def.'s SOF ¶ 10.

Ramiro ("Ramon") Balderrama-Baca worked for Clarence Davids from 2009 to 2014; he paid for his uniforms under the 2009–2012 policy but never rented uniforms. Def.'s SOF ¶¶ 21–22. Pedro Escutia began working for Clarence Davids in 2010 or 2011 and is still employed there; rental fees were deducted from his paychecks. *Id.* ¶¶ 18–20. Benjamin Zinzun-Ortiz was also subject to the uniform-rental policy. *Id.* ¶ 26. Salvador Marquez worked for Clarence Davids from 1976 to 2017; the uniform cost was deducted from his paychecks. *Id.* ¶¶ 23–24. Carlos Acuna worked for Clarence Davids from 1995 to 2015; he was also subject to payroll deductions for uniforms. *Id.* ¶ 17. Each employee received the uniforms for which he paid. Def.'s SOF ¶¶ 16, 20, 22, 24, 26.

3

Plaintiffs filed this lawsuit in July 2015, and in March 2017, the Court certified three subclasses with respect to the IWPCA claim:

> *Subclass I: 2005–2010 Landscaping Seasons:* All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, from July 2, 2005 through the end of the 2010 landscaping season.
>
> *Subclass II: 2011–2012 Landscaping Seasons:* All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced one or more deductions from pay for uniform costs, in the 2011 and 2012 landscaping seasons.
>
> *Subclass III: 2013–2016 Landscaping Seasons:* All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, from the 2013 landscaping season through the end of the 2016 landscaping season.

Mem. Op. & Order at 21. The parties' cross-motions for summary judgment as to liability for Plaintiffs' IWPCA claim are now before the Court.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The evidence considered for summary judgment "must be admissible

4

if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). The Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

Moreover, Rule 56 "requires the district court to grant a motion for summary judgment after discovery 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 743 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), *overruled on other grounds by Ortiz v. Werner Enters.*, 834 F.3d 760 (7th Cir. 2016). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## Analysis

Clarence Davids argues as a threshold matter that Plaintiffs lack standing to prosecute this action. Alternatively, it contends that its payroll practices satisfied the IWPCA, because the uniforms were for the benefit of its employees, and Clarence Davids deducted the costs from an employee's pay with his or her consent.

5

**I.      Standing**

To have Article III standing to sustain a lawsuit in federal court, a plaintiff must, *inter alia*, suffer an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016); *see Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) (applying *Spokeo*). Absent standing, a federal court lacks subject matter jurisdiction over a case. *See, e.g., Gubala*, 846 F.3d at 911.

The party invoking federal jurisdiction always bears the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561; *Hummel v. St. Joseph Cty. Bd. of Com'rs*, 817 F.3d 1010, 1015–16 (7th Cir. 2016). The invoking party's burden increases as the case proceeds through the stages of litigation. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal quotation marks and citations omitted); *see id.* at 567 n.3 (citing *Celotex*, 477 U.S. at 322).

As an initial matter, it is undisputed that, prior to the 2009 landscaping season, Clarence Davids took no payroll deductions for the cost of uniforms.

Accordingly, a portion of the class members in Subclass I—those who did not work for Clarence Davids past the end of the 2008 landscaping season—have not suffered any injury-in-fact.

Clarence Davids argues, however, that even the class members who did receive deductions lack standing. Clarence Davids points to two facts: (1) the uniforms were, and continue to be, mandatory; and (2) no Plaintiff argues that he did not receive the uniforms for which he paid. According to Clarence Davids, this demonstrates that the class members suffered no "concrete" injury because they would have had to pay for the uniforms one way or another. *See Spokeo*, 136 S. Ct. at 1548. Clarence Davids goes on to argue that, even if its challenged practices had violated the IWPCA, they were merely "bare procedural violation[s], divorced from any concrete harm." *See id.* at 1549.

Clarence Davids's loose reading of *Spokeo* misses the mark. *Spokeo* did not hold that "procedural" violations could never confer standing. *See id.* at 1549–50.[3] Rather, it recognized that procedural violations may be sufficiently concrete for standing purposes if they implicate the substantive risks that the legislature sought to curb in adopting the statute. *See id.*; *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 615 (7th Cir. 2019). Accordingly, "standing questions . . . sometimes require [the court] to identify the particular interest [the legislature] sought to protect and to determine if the plaintiff has suffered a concrete injury to that interest." *Rivera*, 913 F.3d at

---

[3] In fact, the Supreme Court did not even hold that the procedural violation in *Spokeo* was insufficiently concrete to confer standing; it remanded to the Ninth Circuit to consider the question. *See* 136 S. Ct. at 1550 & n.8.

615. Here, the IWPCA is concerned with unauthorized or unwarranted payroll deductions. *See* 820 Ill. Comp. Stat. 115/9. That is precisely what Plaintiffs in this case allege occurred; the unjustified paycheck deductions they allege are the *sine qua non* of a claim under the IWPCA. *See Kavanagh v. KLM Royal Dutch Airlines*, 556 F. Supp. 242, 245 (N.D. Ill. 1983).

In contrast, the cases cited by Clarence Davids all involved technical violations that bore little relation to the substantive rights at issue. For instance, in *Meyers v. Nicolet Restaurant of De Pere, LLC*, the Seventh Circuit concluded that the printing of a customer's credit-card expiration date on a receipt was not a concrete injury under the Fair and Accurate Credit Transactions Act ("FACTA"), because "failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft." 843 F.3d 724, 727–28 (7th Cir. 2016). Similarly, in *Aguilar v. Rexnord LLC*, the court held that an employer's failure to obtain a signed release or explain its fingerprint policy to the plaintiff was insufficient to confer standing under the Illinois Biometric Information Privacy Act ("IBIPA"). No. 17 CV 9019, 2018 WL 3239715, at *2 (N.D. Ill. July 3, 2018). The court concluded that violations of the IBIPA's notice and consent provisions did not create an "appreciable risk of harm to Aguilar's right to privacy in his fingerprints"—the "core interest" the legislature sought to protect— because Aguilar's fingerprints were not obtained or disclosed without his consent. *See id.* at *2–3; *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 888–89 (7th Cir. 2017) (plaintiff lacked standing to challenge a "non-compliant" disclosure under the Fair Credit Reporting Act because it did not implicate Congress's concern

8

with job applicants' unknowing consent to allowing a prospective employer to procure a credit report); *Vega v. Mid Am. Taping & Reeling, Inc.*, No. 1:16-cv-08158, 2018 WL 2933676, at *4 (N.D. Ill. June 12, 2018) (plaintiffs lacked standing to challenge a standalone "misclassification" as independent contractors where nothing suggested that "Congress was ever concerned about standalone misclassifications that do not result in any financial or employment harm").

The fact that Plaintiffs may have had to pay for uniforms anyway and received what they paid for does not change this analysis.[4] Instead, it goes to the issue of damages and what Plaintiffs may be entitled to recover under the IWPCA. That is an issue of merits, not standing. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed.").

Accordingly, the Court enters summary judgment in Clarence Davids's favor with respect to the portion of the employees in Subclass I who did not work for Clarence Davids after the end of the 2008 landscaping season. In all other respects, the Court denies Clarence Davids's motion for summary judgment on lack of standing grounds.

---

[4] It is worth noting that the undisputed evidence shows that Clarence Davids covered the cost of uniforms prior to 2009, suggesting that the employees' purchase of the uniforms was *not* the only option available. *See* Def.'s SOF ¶ 5.

## II. Deductions Made for the Employees' Benefit

The IWPCA prohibits deductions from wages or final compensation unless (1) required by law; (2) made "to the benefit of the employee"; (3) made in response to a valid wage assignment or wage deduction order; (4) made with the "express written consent of the employee, given freely at the time the deduction is made," or (5) made by certain government entities. 820 Ill. Comp. Stat. 115/9. Clarence Davids argues that, because its uniform deductions were "to the benefit of" its employees in a number of ways, it was not required to obtain its employees' consent.

First, Clarence Davids contends that the uniforms included such features as long pants and "reflective caution stripes," Def.'s SOF ¶ 4, and thus the uniform deductions benefited the employees by promoting safety. Second, because its uniforms were mandatory, Clarence Davids claims that the payroll deductions benefited the employees by eliminating the need for them to pay for the uniforms in some other way. In support, it points to *Bell v. Bimbo Foods Bakeries Distribution, Inc.*, where the court concluded that such convenience did constitute a "benefit to the employee" under the IWPCA. No. 11 C 03343, 2013 WL 6253450, at *4 (N.D. Ill. Dec. 3, 2013).

Plaintiffs vigorously dispute the safety benefits of the uniforms, arguing that deposition testimony establishes that employees could have worn their own pants and shirts, and that there was no legitimate need for the so-called caution stripes. Plaintiffs also contend that the IWPCA does not recognize "convenience" as a legitimate benefit, citing *Torres v. Nation One Landscaping, Inc.*, No. 12 CV 9723,

10

2016 WL 7049048, at *5 (N.D. Ill. Dec. 5, 2016) (rejecting administrative convenience as a benefit under the IWPCA where employer had not "subsidized the cost of the [uniform] rentals or . . . received a discounted rate for the group, which it shared with the employees").

Quite apart from these cases, however, the Illinois Department of Labor ("IDOL")—the state agency charged with enforcing and promulgating regulations under the IWPCA, *see Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1006 (N.D. Ill. 2007)—has issued a specific regulation addressing the very question in dispute:

> An employer shall not deduct the cost of purchasing and/or cleaning uniforms required by the employer from an employee's wages or final compensation, unless the employee's express written consent is given freely at the time the deduction is made. Distinctive outfits or accessories, or both, intended to identify the employee with a specific employer shall be considered a uniform. . . .

56 Ill. Admin. Code § 300.840. This regulation unequivocally mandates that, where an employer requires its employees to wear a uniform intended to identify the employee with the particular employer, the employer must obtain the employee's express written consent before deducting the cost of the uniform from his or her wages.

The question, then, is whether the uniforms worn by Plaintiffs and required by Clarence Davids were "intended to identify the employee with a specific employer," thereby subjecting Clarence Davids to the requirements of § 300.840. As to this issue, there is no dispute. Clarence Davids admits that its uniforms have a logo on the breast area of the shirt as well as on the hat. Def.'s LR 56.1(b) Resp. ¶¶ 9, 11, ECF No. 149. Additionally, Clarence Davids's corporate witness agreed that it is

11

"important to the Company to be able to identify their employees to the customers" and that the uniforms "identified landscaping laborers as Clarence Davids employees." *Id.* ¶¶ 10, 12.

Clarence Davids's argument rests on the proposition that uniforms can serve multiple purposes, and just because a uniform might identify an employee with an employer, it does not mean that the uniform cannot also benefit the employee within the meaning of the IWPCA. But such an argument is contrary to the plain language of § 300.840, which requires express written consent so long as a uniform is intended to perform an identifying function. In other words, in the considered judgment of the IDOL, a uniform that identifies an employee with an employer always triggers an employer's obligation to obtain express written consent before deducting the cost of the uniform from an employee's pay, even though the uniform might provide some added benefit to the employee.[5] Clarence Davids does not argue that § 300.840 exceeds the rulemaking authority of the IDOL, and the Illinois Supreme Court has held that the agency's interpretation of the IWPCA "constitutes an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894 (Ill. 2005); *see also Watts v. ADDO Mgmt., LLC*, 97 N.E.3d 75, 81 (Ill. App. Ct. 2018) (turning to IDOL

---

[5] This is not an isolated instance. The IDOL has enacted similar provisions with respect to deductions for other mandatory items that could potentially benefit employees. *See, e.g.*, 56 Ill. Adm. Code §§ 300.780 (required training and educational expenses); 300.850 (required equipment).

regulations to construe an undefined term in the IWPCA); *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2009) (same).

### III. Deductions Made with Written Consent

Under both the IWPCA and § 300.840, therefore, Clarence Davids could deduct the cost of its required uniforms only with the "express written consent of the employee, given freely at the time the deduction is made." 820 Ill. Comp. Stat. 115/9(4); 56 Ill. Admin. Code § 300.840. Another regulation, 56 Ill. Admin. Code § 300.720(b), provides that consent for ongoing deductions may be considered "freely given" only if the "written agreement provides for [the] period of time [that deductions will occur], provides for the same amount of deduction each period[,] and allows for voluntary withdrawal for the deduction." Plaintiffs contend that none of the authorization forms they signed were "freely given" as none allowed for voluntary withdrawal of the deductions.

#### A. Deductions Taken Before 2013

As an initial matter, it is undisputed that no employees signed authorization forms prior to the 2013 landscaping season. *See* Def.'s LR 56.1(b) Resp. ¶ 8; Def.'s SOF ¶¶ 11–13. Accordingly, pursuant to the IWPCA and § 300.840, Plaintiffs in Subclasses I (to the extent that they worked in 2009 or later) and II are entitled to summary judgment.

#### B. Deductions Taken from 2013 to 2016

As for deductions taken after 2013, Clarence Davids contends that its failure to notify employees of their right to opt out of deductions is merely technical, because

13

the uniforms were mandatory and Plaintiffs would have had to pay for them anyway. Additionally, it argues, there is no evidence that Clarence Davids would not have allowed Plaintiffs to opt out of the deductions upon request.

First, nowhere within its provisions does the IWPCA exempt "technical" violations of the statute. Second, Clarence Davids admits that "[e]mployees who were required to wear uniforms were not given the option to opt out of the uniform rental deduction because the uniforms were mandatory." Def.'s SOF ¶ 10. The only reasonable conclusion from this statement is that Clarence Davids did not allow Plaintiffs to opt out of the deductions. Whether it would have done so is immaterial.

Accordingly, the Court concludes that Clarence Davids's authorization forms violated the IWPCA and § 300.720(b), and Plaintiffs in Subclass III are entitled to summary judgment.[6]

## Amended Subclass Definitions

When certifying the class, the Court noted that certification could be revisited "if the creation of subclasses prove[d] unmanageable or problematic after the Court's original certification decision." Mem. Op. & Order at 13. Contrary to the facts in the record at the class-certification stage, the undisputed evidence now shows that Clarence Davids had the following payroll deduction policies: (1) no uniform deductions prior to 2009, (2) deductions made without authorization forms from 2009 to 2012, and (3) deductions made with faulty authorization forms from 2013 to 2016.

---

[6] Because the Court concludes that none of Clarence Davids's authorization forms complied with Illinois law, the Court does not address Plaintiffs' alternative arguments regarding the timing of the authorization forms in relation to when deductions were taken.

14

Accordingly, the Court's decision to grant summary judgment to Clarence Davids regarding the pre-2009 no-deduction policy effectively splits Subclass I, which currently covers employees who worked both before 2009 and from 2009 to 2010. Additionally, the Court's summary-judgment decision regarding Clarence Davids's policy from 2009 to 2012 covers the latter portion of Subclass I as well as all of Subclass II.

As a result, based upon the record before it, the Court proposes the following amended subclass definitions:

> *Subclass I: 2005-2008 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members from July 2, 2005 through the end of the 2008 landscaping season.
>
> *Subclass II: 2009-2012 Landscaping Seasons:* All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, and who experienced on or more deductions from pay for uniform costs, from the 2009 landscaping season through the end of the 2012 landscaping season.
>
> *Subclass III: 2013–2016 Landscaping Seasons*: All employees who work or worked for Clarence Davids and Company as maintenance crew members and/or landscape crew members, from the 2013 landscaping season through the end of the 2016 landscaping season.

Under the amended subclass definitions, summary judgment would be entered in favor of Clarence Davids as to Amended Subclass I, and in favor of Plaintiffs as to Amended Subclasses II and III. To the extent that either party objects to this

amendment, any objection should be filed within twenty-one days.[7] A status hearing is set for 5/2/19 at 9:00 a.m.

## Conclusion

For the reasons stated herein, Plaintiffs' motion for partial summary judgment as to liability [142] is granted in part and denied in part, and Clarence Davids's motion for partial summary judgment as to liability [138] is granted in part and denied in part. To the extent that either party objects to the Court's proposed subclass amendment, any objection should be filed within twenty-one days. A status hearing is set for 5/2/19 at 9:00 a.m.

**IT IS SO ORDERED.**          **ENTERED 3/6/19**

_____
**John Z. Lee**
**United States District Judge**

---

[7] The parties should limit any objections to the amended subclass definitions and not reargue the motion for class certification already decided by the Court. Any objections to class certification previously raised by Defendant in its original brief are preserved.

16